**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL BALDWIN, JEFFRY IRWIN, JENNY IRWIN, TIM THOMAS, and GREG WATT, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CENCORA, INC., and HACKBARTH DELIVERY SERVICE, INC. <br><br> Defendants. | CIVIL ACTION NO: _____ |

## COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

1. This is an action brought on behalf of individuals who are current and former delivery drivers for Defendants Cencora, Inc. and Hackbarth Delivery Service, Inc. ("Hackbarth") (collectively "Defendants") challenging the unlawful misclassification of them as independent contractors instead of employees. Defendant Cencora contracts with Hackbarth to perform "last mile" delivery of pharmaceuticals, other medical products, financial documents, office supplies, and various other products across the United States. Cencora and Hackbarth control, supervise, and direct the manner in which its delivery drivers perform these services. The drivers' last mile delivery services are integral and central to Cencora and Hackbarth's business. Moreover, the delivery drivers are economically dependent on Cencora and Hackbarth

to assign them deliveries, and drivers do not operate independently established delivery businesses.

2.      The above-named Plaintiffs assert claims under the federal Fair Labor Standards Act ("FLSA"), on behalf of themselves and all others similarly situated who have performed pharmaceutical and other product deliveries for Defendants and who were misclassified as independent contractors instead of employees, seeking remedies for statutory violations resulting from this misclassification.

3.      Plaintiffs also assert claims, under Fed. R. Civ. P. 23, on behalf of themselves and other delivery drivers who worked for Hackbarth based on an unjust enrichment. Plaintiffs contend that Hackbarth made two deductions from their pay each month for purported cargo insurance policies, and that one of the charges did not correspond to any actual policy obtained by Hackbarth.

## PARTIES

4.      Plaintiff Daniel Baldwin is an adult resident of Talbott, Tennessee. From approximately December 2022 to approximately May 2025, Baldwin delivered pharmaceutical and medical products on behalf of and at the direction of Cencora and Hackbarth in Tennessee. During the relevant time, although he was classified as an independent contractor, Plaintiff was in fact Defendants' employee as that term is defined in the FLSA. Plaintiff Baldwin's Notice of Consent is attached as **Exhibit A.**

5.      Plaintiff Jeffery Irwin is an adult resident of Rockford, Tennessee. From approximately February 2018 to approximately April 2025, Irwin delivered pharmaceutical and medical products on behalf of and at the direction of Cencora and Hackbarth in Tennessee. During the relevant time, although he was classified as an independent contractor, Plaintiff was

in fact Defendants' employee as that term is defined in the FLSA. Plaintiff Irwin's Notice of Consent is attached as **Exhibit B.**

6. Plaintiff Jenny Irwin is an adult resident of Rockford, Tennessee. From approximately February 2018 to approximately April 2025, Irwin delivered pharmaceutical and medical products on behalf of and at the direction of Cencora and Hackbarth in Tennessee. During the relevant time, although he was classified as an independent contractor, Plaintiff was in fact Defendants' employee as that term is defined in the FLSA. Plaintiff Irwin's Notice of Consent is attached as **Exhibit C.**

7. Plaintiff Tim Thomas is an adult resident of Seymour Tennessee. From approximately November 2019 to approximately April 2024, Thomas delivered pharmaceutical and medical products on behalf of and at the direction of Cencora and Hackbarth in Tennessee. During the relevant time, although he was classified as an independent contractor, Plaintiff was in fact Defendants' employee as that term is defined in the FLSA. Plaintiff Thomas' Notice of Consent is attached as **Exhibit D.**

8. Plaintiff Greg Watt is an adult resident of Loudon, Tennessee. From approximately September 2022 to approximately September 2023, Watt delivered pharmaceutical and medical products on behalf of and at the direction of Cencora and Hackbarth in Tennessee. During the relevant time, although he was classified as an independent contractor, Plaintiff was in fact Defendants' employee as that term is defined in the FLSA. Plaintiff Watt's Notice of Consent is attached as **Exhibit E.**

9. Plaintiffs bring this action on their own behalf and on behalf of all similarly situated individuals in the states in which Cencora and Hackbarth operate.

10.  Defendant Cencora, Inc. ("Cencora") is a corporate entity, organized in Pennsylvania, with its headquarters (principal place of business) in Conshocken, Pennsylvania.

11.  Defendant Hackbarth Delivery Service, Inc. ("Hackbarth") is a corporate entity, organized in Alabama, with its headquarters (principal place of business) in Mobile, Alabama. Defendant Hackbarth conducts its delivery business throughout the United States.

12.  Defendant Hackbarth states on its website that it "[s]pecialz[es] in lat mile delivery" and has "41 locations across 11 states" in the "Southeast, Midwest, and Mid-Atlantic".[1]

13.  Defendants Cencora and Hackbarth are engaged in interstate commerce and employ individuals engaged in interstate commerce and are therefore covered by the FLSA, and both Cencora and Hackbarth are "employers" as that term is defined under the FLSA.

## JURISDICTION AND VENUE

14.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

15.  The Court also has jurisdiction over the FLSA claims asserted in this matter pursuant to 29 U.S.C. § 216(b).

16.  Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (b), because Defendant Cencora is headquartered in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTS

17.  Cencora describes itself as "a leading pharmaceutical solutions organization" which is "[r]eshaping how healthcare is delivered with new products and solutions".[2]

---

[1] https://www.hackbarthdelivery.com/ (last visited May 10, 2025).
[2] https://www.cencora.com/who-we-are (last visited May 10, 2025).

4

18. Hackbarth performs "final mile" or "last mile" delivery services of pharmaceutical products throughout the United States. In order to provide these services, Hackbarth employs hundreds of delivery drivers like Plaintiffs and collective action members.

19. Hackbarth advertises its services on its website as follows: "Hackbarth Delivery Service is the premier provider of transportation and logistics solution . . . Our Mission is to provide Knock Your Socks Off™ customer service as a single source solution for transportation and logistics needs."[3]

20. Cencora contracted with Hackbarth to make deliveries of pharmaceuticals and other products, and Plaintiffs and other delivery drivers made pharmaceutical deliveries exclusively for Cencora.

21. Cencora created the daily delivery routes which were assigned to Plaintiffs, and created the delivery manifests for Plaintiffs and other delivery drivers.

22. Every morning on which Plaintiffs and other delivery drivers were assigned to make deliveries, a Cencora truck delivered the pharmaceutical products Plaintiffs and other drivers had to deliver, along with the delivery manifests.

23. Plaintiffs and other delivery drivers had to follow rules and instructions promulgated by Cencora in a "Distribution Services Reference Manual" in performing their work, including rules for how to arrange pharmaceutical products in stores, delivery routes, and timeframes.

24. Specifically, the "Distribution Services Reference Manual" has a section setting out rules and requirements for delivery drivers, including the following:

---

[3] https://www.hackbarthdelivery.com/about-us/ (last visited May 10, 2025).

- Drivers must perform vehicle inspections before each route is loaded. All drivers will perform a walk around and check specific areas for defects. All vehicles shall be properly fueled and inspected before they begin loading the product for the route.

- All drivers need to be able to deliver all pharmaceuticals before they stop for fuel. Drivers need to make sure that their vehicle is in good mechanical condition to help avoid any issues while on route that could leave the product unsecured.

- Only approved vehicles are permitted to deliver for [Cencora]. These vehicles are; Cargo Vans, Box Trucks, Cars and Mini Vans. Trucks with toppers are not permitted.

- Drivers will obtain a delivery signature and the customer must note the time of delivery on manifest. The manifest must be returned to [Cencora].

- Any returns that are brought back by the driver shall pass from the driver's possession through dispatch so they may be logged and secured until they are returned to the appropriate customer.

25. Plaintiffs used a scanning app provide by Cencora to scan in their assigned deliveries at the beginning of each day.

26. Plaintiffs used a delivery application provided by Cencora in making their assigned deliveries. Cencora monitored Plaintiffs' and other delivery drivers' progress in making their assigned deliveries throughout the day, tracking their location in real time.

27. Upon completing their routes, Plaintiffs were required to bring back any pharmaceutical products they had in their vehicle to the Hackbarth warehouse. At the end of the day, these products were loaded back onto the Cencora truck and returned to Cencora.

28. The compensation Hackbarth paid to Plaintiffs and other delivery drivers was based on compensation received by Hackbarth from Cencora.

29. Accordingly, Cencora and Hackbarth acted as joint employers with respect to Plaintiffs and class members.

30. Although Plaintiffs and other delivery drivers were classified by Hackbarth as independent contractors, these delivery drivers were employees of both Cencora and Hackbarth for purposes of the federal Fair Labor Standards Act.

31. The work of Plaintiffs and other delivery drivers falls squarely within both Cencora and Hackbarth's usual course of business. Indeed, Plaintiffs and other delivery drivers are central both to Cencora's stated mission of "[r]eshaping how healthcare is delivered" and to Hackbarth's core business as a delivery company.

32. Plaintiffs and other delivery drivers are not engaged in independently established trades, occupations, professions, or businesses. Rather, delivery drivers rely upon Cencora and Hackbarth to assign them deliveries.

33. Cencora and Hackbarth also control the work performed by Plaintiffs and other delivery drivers by assigning the deliveries, scheduling the deliveries, promulgating rules for the deliveries, monitoring the drivers' work and maintaining detailed records of each delivery performed, determining the delivery drivers' rate of pay, and retaining the authority to terminate any delivery drivers whose work is unsatisfactory.

34. Hackbarth pays Plaintiffs and other delivery drivers a flat amount per route or per delivery stop. All of these rates are unilaterally determined by Hackbarth, based on compensation received from Cencora.

35. Hackbarth deducts various amounts from the delivery drivers' weekly pay for business-related costs, including insurance, office fees, and administrative fees, all of which were required in order to perform the job.

36. Hackbarth has, since at least 2021, made duplicate deductions from Plaintiffs' and other delivery drivers' compensation for cargo insurance. Upon information and belief, the second cargo insurance charge did not correspond to any actual insurance policy.

37. By misclassifying delivery drivers as independent contractors, Cencora and Hackbarth require the drivers to bear the costs of performing delivery services, including, but not limited to, gasoline, tolls, vehicle maintenance and depreciation (as drivers were required to use their own vehicles), and insurance.

38. Cencora and Hackbarth did not reimburse Plaintiffs and other delivery drivers for incurring necessary expenditures or losses within the scope of their employment.

39. Plaintiffs and other delivery drivers typically work more than eight (8) hours per day from the time they arrive at Hackbarth's facilities until their route(s) servicing Cencora's clients is complete.

40. Plaintiffs and other delivery drivers work more than 40 hours per week because they routinely work shifts of 12-13 hours per day, 5-6 days per week.

41. For example, Plaintiff Tim Thomas typically made deliveries for Defendants 12 hours a day, five days a week.

42. Plaintiff Jeffery Irwin often worked 12-13 hour days, and was assigned to make deliveries 5 days a week.

43. Plaintiffs and other delivery drivers were not paid time-and-a-half for hours worked in excess of 40 a week.

44. In addition, Plaintiffs and other delivery drivers frequently were not paid for all hours worked at an hourly rate at or in excess of the minimum wage rates established by the FLSA and the laws of the various states in which they worked. For most drivers, in many or all

weeks, the drivers' substantial out-of-pocket, work-related expenses brought their compensation below the statutory minimum wage.

45. Defendants' misclassification of its delivery drivers as independent contractors and the additional violations described above were willful and undertaken in bad faith.

## COLLECTIVE ACTION ALLEGATIONS

46. Plaintiffs' FLSA claims should proceed as a collective action on behalf of all similarly situated individuals in the United States.

47. All potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Defendants did not provide any overtime premium when delivery drivers worked more than forty hours per week, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this action on behalf of themselves and other individuals who performed pharmaceutical and medical product deliveries for Defendants within the past three years.

49. Class action treatment is appropriate here because all of Federal Rule of Civil Procedure 23's class action requisites are satisfied. In particular:

(a) The class includes over 40 individuals, all of whom are readily ascertainable based on Defendants' records and are so numerous that joinder of all class members is impracticable.

(b) Plaintiffs are class members, their claims are typical of the claims of other class members, and they have no interests that are antagonistic to or in conflict with the interests of other class members.

(c) Plaintiffs and their lawyers will fairly and adequately represent the class members and their interests.

(d) Questions of law and fact are common to all class members, because this action concerns Defendants' common business policies and practices, as summarized herein. The legality of these practices will be determined through the application of generally applicable legal principles to common facts.

(e) Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## COUNT I
### FAIR LABOR STANDARDS ACT–FAILURE TO PAY MINIMUM WAGES
### INDIVIDUAL AND COLLECTIVE ACTION

50. Plaintiffs incorporate the preceding paragraphs by reference herein.

51. After accounting for the expenses Plaintiffs and the putative collective members paid that were necessary to perform their job, Defendants failed to pay Plaintiffs and the members of the putative collective an hourly rate of at least the federal minimum wage of $7.25 per hour as required by the FLSA, 29 U.S.C. § 206(a).

52. Defendants' conduct in failing to ensure that its delivery drivers across the country, with whom they have relied upon to perform a critical and integral component of their business services, receive the federal minimum wage, after accounting for the expenses they paid that were necessary to perform their job, was knowing, willful, intentional, and done in bad faith.

53. This claim is brought on behalf of a group of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT II
### FAIR LABOR STANDARDS ACT–FAILURE TO PAY OVERTIME WAGES
### INDIVIDUAL AND COLLECTIVE ACTION

54. Plaintiffs incorporate the preceding paragraphs by reference herein.

55. Defendants failed to pay Plaintiffs and the members of the putative FLSA collective at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty (40) hours weekly as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

56. The failure of Defendants to compensate Plaintiffs and the members of the putative collective for overtime work as required by the FLSA was knowing, willful, intentional, and done in bad faith.

57. This claim is brought on behalf of a group of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT III
### UNJUST ENRICHMENT
### INDIVIDUAL AND CLASS ACTION

58. Plaintiffs incorporate the preceding paragraphs by reference herein.

59. Hackbarth was unjustly enriched by its actions in requiring Plaintiffs and other delivery drivers to pay for a fictitious cargo insurance policy, which Hackbarth did not, in fact, have, and which Hackbarth should have borne the cost of.

60. This claim is brought on behalf of all drivers who have worked for Hackbarth in the last three years prior to the date of filing of the initial Complaint until the date of judgment in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter the following relief:

a. An order authorizing the sending of appropriate notice to current and former drivers who worked for Cencora and Hackbarth who are potential members of the

   collective action under the Fair Labor Standards Act, giving them the opportunity to opt-in to this action;

b. A declaratory judgment that Defendants have willfully and in bad faith violated the minimum wage and overtime provisions of the FLSA, and have deprived Plaintiffs and the members of the collective of their rights to such compensation;

c. A declaratory judgment that the plaintiff and collective members are employees, not independent contractors under the FLSA;

d. Certification of a class pursuant to Fed. R. Civ. P. 23;

e. An order requiring Defendants to provide a complete and accurate accounting of all the wages to which Plaintiffs and members of the collective are entitled;

f. An award of monetary damages to Plaintiffs and members of the collective in the form of back pay for unpaid minimum wages and overtime compensation, together with liquidated damages in an equal amount under the FLSA;

g. An award of monetary damages to Plaintiffs and members of the class for their unjust enrichment claims;

h. Attorneys' fees and costs;

i. An award of prejudgment interest, if available; and

j. Such further relief as the Court deems just and proper.

Respectfully submitted,

DANIEL BALDWIN, JEFFRY IRWIN,
JENNY IRWIN, TIM THOMAS,
and GREG WATT, individually and on behalf of all others similarly situated,

By their attorneys,

/s/ *Sarah Schalman-Bergen*
Sarah Schalman-Bergen
(PA Bar ID 206211)
Lichten & Liss-Riordan, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
ssb@llrlaw.com

Olena Savytska (*pro hac vice anticipated*)

                Harold Lichten (*pro hac vice anticipated*)
                LICHTEN & LISS-RIORDAN, P.C.
                729 Boylston St., Suite 2000
                Boston, MA 02116
                Telephone: (617) 994-5800
                Facsimile: (617) 994-5801
                osavytska@llrlaw.com
                hlichten@llrlaw.com


Dated:  May 21, 2025