**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DANIEL BALDWIN, JEFFRY IRWIN,
JENNY IRWIN, TIM THOMAS, and GREG
WATT, on behalf of themselves and all others
similarly situated,

       *Plaintiffs,*

    v.

CENCORA, INC. and HACKBARTH
DELIVERY SERVICE, INC.,

       *Defendants.*

CIVIL ACTION
NO. 25-2610

**Pappert, J.**                                                                                      **March 26, 2026**

### MEMORANDUM

Daniel Baldwin, Jeffry Irwin, Jenny Irwin, Tim Thomas and Greg Watt brought

a putative class action against Cencora, Inc. and Hackbarth Delivery Service, Inc.,

alleging violations of the Fair Labor Standards Act and unjust enrichment.  Hackbarth

moved to dismiss all claims for lack of personal jurisdiction and renewed the motion

after the Court ordered the parties to conduct jurisdictional discovery.  The Court

grants the motion but, rather than dismissing all claims against Hackbarth, transfers

the case to the Eastern District of Tennessee.

I

Hackbarth is an Alabama-based company that delivers pharmaceutical products

throughout the United States, (Compl. ¶ 18, Dkt. No. 1), and Cencora, a

Pennsylvania-based company, supplies those products to Hackbarth, (*id.* ¶¶ 17, 20.)

Between 2018 and 2025, Plaintiffs—all residents of Tennessee—began delivering

"pharmaceutical and medical products on behalf of and at the direction of Cencora and

1

Hackbarth in Tennessee." (*Id.* ¶¶ 4–8.) As a condition of their job, Plaintiffs signed agreements with Subcontracting Concepts LLC, a third-party administrator for Hackbarth, while located in Tennessee.[1] *See* (Baldwin's Resps. at 3–4, Def.'s Ex. 1, Dkt. No. 45-4); (Jenny Irwin's Resps. at 3–4, Def.'s Ex. 2, Dkt. No. 45-5); (Watt's Resps. at 3, Def.'s Ex. 3, Dkt. No. 45-6); (Jeffry Irwin's Resps. at 3, Def.'s Ex. 4, Dkt. No. 45-7); (Jeffry Irwin Dep. at 55:1–4, Def.'s Ex. 5, Dkt. No. 45-8); (Thomas Dep. at 30:13–15, Def.'s Ex. 6, Dkt. No. 45-9); (Thomas's Resps. at 3–4, Def.'s Ex. 7, Dkt. No. 45-10).

Plaintiffs contend Hackbarth and Cencora jointly employed them. (Compl. ¶ 29.) Cencora distributed its products to a Hackbarth warehouse in Tennessee and provided daily routes for each delivery. *See* (*Id.* ¶¶ 20–22). Hackbarth assigned those jobs to Plaintiffs, who tracked their work on an application Cencora provided them. *See* (*Id.* ¶¶ 22–27). Plaintiffs returned any leftover products to a Cencora truck at the warehouse. *See* (*Id.* ¶ 27). None of that work occurred in Pennsylvania. *See* (Baldwin Dep. at 49:24–50:1, Def.'s Ex. 8, Dkt. No. 45-11); (Jeffry Irwin Dep. at 68:3–9); (Jenny Irwin Dep. at 61:19–21, Def.'s Ex. 9, Dkt. No. 45-12); (Thomas Dep. at 30:10–12); (Watt Dep. at 31:11–13, Def.'s Ex. 10, Dkt. No. 45-13).

Using compensation from Cencora, Hackbarth paid Plaintiffs a flat amount per route or delivery. (Compl. ¶¶ 34–35.) Plaintiffs allege Hackbarth "made duplicate deductions" from their pay "for cargo insurance." (*Id.* ¶ 36.) Hackbarth also purportedly misclassified Plaintiffs as "independent contractors" rather than "employees," (*id.* ¶ 30), and thus required them to "bear the costs of performing delivery

---

[1]    Subcontracting Concepts provided Hackbarth payment processing, access to insurance programs, equipment leasing options, and tax escrow accounts for quarterly reporting and payment of taxes. *See* (Decl. of Ryan L. Wise ¶¶ 4–10, Defs.' Ex. A, Dkt. No. 37-2).

services, including, but not limited to, gasoline, tolls, vehicle maintenance and depreciation . . . and insurance," (*id.* ¶ 37.)  Cencora and Hackbarth have not reimbursed Plaintiffs for any losses associated with their work.  (*Id.* ¶ 38.)

II

A

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), "a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  Such a motion "is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.*, whether *in personam* jurisdiction actually lies."  *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (citation modified).  But "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht*, 384 F.3d at 97.  Still, a plaintiff must prove personal jurisdiction by a preponderance of the evidence.  *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).

Once the defense has been raised, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone."  *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (quoting *Time Share*, 735 F.2d at 67 n.9).  Indeed, the "plaintiff must respond with actual proofs, not mere allegations."  *Id.*

B

Personal jurisdiction can be general or specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). Hackbarth is not subject to general jurisdiction in Pennsylvania because it is not incorporated nor has its principal place of business here. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (citation modified)).

Specific jurisdiction exists when the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). The Supreme Court "has articulated two tests for specific jurisdiction: (1) the 'traditional' test—also called the 'minimum contacts' or purposeful availment test . . . and (2) the 'effects' test." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (first quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); then quoting *Calder v. Jones*, 465 U.S. 783, 787 & n.6 (1984)). Only the traditional test is at issue here. *See* (Pl.'s Opp'n to Mot. at 9–13, Dkt. No. 46).

That test has three elements. First, the plaintiff must show the defendant has "minimum contacts" with the forum such that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum" and "invok[ed] the benefits and protections of [the forum's] laws." *Id.* at 186 (alterations in original) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 109 (1987)). Second, the plaintiff's claims "must 'arise out of or relate to' at least some of the defendant's contacts," "evidencing a strong relationship among the defendant, the forum, and the

4

litigation." *Id.* (quoting *Ford Motor*, 592 U.S. at 365).  Third, exercising jurisdiction over the defendant must "comport[] with traditional notions of fair play and substantial justice" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Id.* (alteration in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

1

Plaintiffs have not proven Hackbarth has minimum contacts with Pennsylvania. No record evidence shows a connection between the two:

- Hackbarth is headquartered in Alabama, where its officers direct, control and coordinate corporate activities, including its human resources and financial affairs.  (Decl. of Roy Brandon Barnhill ¶ 3, Dkt. No. 45-2.)

- It has no terminals, warehouses, offices or facilities in Pennsylvania, nor does it operate any divisions, branches or locations here.  (*Id.* ¶¶ 4–5.)

- All its officers and managers work outside of Pennsylvania.  (*Id.* ¶ 6.)

- None of its bank accounts are in Pennsylvania.  (*Id.* ¶ 7.)

- It had no delivery routes to, from or through Pennsylvania.  (*Id.* ¶ 8.)

- During the time of Plaintiffs' claims, it did not perform delivery services under its federal motor carrier authority in Pennsylvania.  (*Id.* ¶ 9.)

- None of the service agreements or amendments between Hackbarth and Cencora require delivery services in Pennsylvania.  (*Id.* ¶ 10.)

- During the time of Plaintiff's claims, Hackbarth had no in-person meetings with Cencora representatives in Pennsylvania for the purpose of negotiating or executing the service agreement or its amendments.  (*Id.* ¶ 11.)

- Hackbarth's primary Cencora account contacts are all based outside of Pennsylvania.  (*Id.* ¶ 12.)

5

Nor did Plaintiffs do anything for Hackbarth in Pennsylvania.  They signed agreements governing their work while in Tennessee.  *See* (Baldwin's Resps. at 3–4); (Jenny Irwin's Resps. at 3–4); (Watt's Resps. at 3); (Jeffry Irwin's Resps. at 3); (Jeffry Irwin Dep. at 55:1–4); (Thomas Dep. at 30:13–15); (Thomas's Resps. at 3–4).  None of them performed services for Hackbarth in Pennsylvania.  *See* (Baldwin Dep. at 49:24–50:1); (Jeffry Irwin Dep. at 68:3–9); (Jenny Irwin Dep. at 61:19–21); (Thomas Dep. at 30:10–12); (Watt Dep. at 31:11–13).  As Plaintiffs concede, they only "delivered pharmaceutical and medical products . . . in Tennessee."  (Compl. ¶¶ 4–8.)

Still, Plaintiffs imply minimum contacts because Hackbarth purportedly had a "joint employment relationship" with Cencora, a Pennsylvania-based company.  *See* (Pl.'s Opp'n to Mot. at 10 (citing Compl. ¶ 29)).  But their "contacts with a [Pennsylvania] citizen that took place outside the state, are not purposeful contacts with [Pennsylvania] itself."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citation modified).  And Cencora's "unilateral activity" with Plaintiffs "is not an appropriate consideration when determining whether [Hackbarth] has sufficient contacts with [Pennsylvania] to justify an assertion of jurisdiction."  *See Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Alleging joint employment doesn't establish minimum contacts either.  That theory is "relevant for determining liability . . . not for determining whether a court may exercise personal jurisdiction over a party."  *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010), *aff'd* 683 F.3d 462 (3d Cir. 2012); *Schrotberger v. Doe*, No. 21-cv-364, 2022 WL 4072962, at *4 (E.D. Pa. Sep. 1, 2022); *Tolliver v. Delmarva Found. for Med. Care*, No. 17-1776, 2018 WL 3735889, at *4

(D. Del. Aug. 3, 2018); *Horowitz v. AT&T Inc.*, No. 17-4827, 2018 WL 1942525, at *7 (D.N.J. Apr. 25, 2018) (collecting cases).  Moreover, "[e]ven if [Hackbarth] [was] liable under a joint employer theory, this does not establish that a separate, non-resident corporate entity without minimum contacts can be haled into a [Pennsylvania] court." *Campanelli v. Image First Unif. Rental Serv., Inc.*, No. 15-04456, 2016 WL 4729173, at *7 (N.D. Cal. Sep. 12, 2016) (citation modified).

Plaintiffs also cite Hackbarth's contractual relationship with Cencora, *see* (Pl.'s Opp'n to Mot. at 10–12), but that doesn't help them for two reasons.  First, it incorrectly centers on Hackbarth's contacts with Cencora, not with Pennsylvania.  *See Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Second, "merely entering into a contract with a resident of a state, absent any indication that the contract was executed or performed there, is insufficient to justify the exercise of personal jurisdiction in that state." *Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022); *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (same); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (same).  Again, nothing in the record shows Hackbarth did anything in Pennsylvania, let alone negotiated, signed, executed or performed any contracts here.  To the contrary, Hackbarth representatives never met with Cencora representatives in Pennsylvania to negotiate or execute the agreements at issue.  (Decl. of Barnhill ¶ 11.)  All its Cencora contacts were based outside of Pennsylvania, and the agreements did not require performance in Pennsylvania.  (*Id.* ¶¶ 10, 12.)[2]

---

[2]    Plaintiffs likewise cite Hackbarth using compensation it received from Cencora to pay them, *see* (Pl.'s Opp'n to Mot. at 10), yet nothing in the record connects those payments to Pennsylvania. The revenue it received from Cencora "comes from a bank account with a routing number located in Florida."  (Def. Stip. ¶ 2, Pl.'s Ex. A, Dkt. No. 46-1.)

None of the cases Plaintiffs cite are comparable to this record.  Each involved a defendant who did more in the forum than merely contract with a resident.  *See Mellon Bank*, 960 F.2d at 1223 (finding minimum contacts based on the defendants providing documentation directly to the plaintiff's bank in Pennsylvania and signing agreements on notes indicating the defendant was a Pennsylvania entity); *Burger King*, 471 U.S. at 466–68 (same based on plaintiff attending management courses in the forum state and negotiating with defendant's headquarters located there); *Carteret Sav. Bank*, 954 F.2d at 146 (same based on meetings and numerous telephone calls with the forum state); *O'Connor*, 496 F.3d at 317 (same); *Hammons v. Ethicon, Inc.*, 240 A.3d 537, 561–62 (Pa. 2020) (same based on shipping products to Pennsylvania and visiting the plaintiff's Pennsylvania facility); *Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 769 (E.D.N.C. 1998) (same based on sending monthly royalty and advertising fees to the forum state); *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482–83 (3d Cir. 1993) (same based on repeatedly communicating, calling, mailing and negotiating with a Pennsylvania resident); *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (same based on sending payments and repeated communications to Pennsylvania).

2

Plaintiffs also fail to "evidenc[e] a strong relationship" among Hackbarth, Pennsylvania, and their claims.  *See Hasson*, 114 F.4th at 193 (citing *Ford Motor*, 592 U.S. at 364).  Hackbarth and Cencora allegedly misclassified them as independent contractors, (Compl. ¶ 1), but no record evidence shows that happened in Pennsylvania. For the reasons already stated, *see supra* subsection II.A.1, Hackbarth did nothing in Pennsylvania as it pertains to Plaintiffs' FLSA or unjust enrichment claims, and

Plaintiffs point to no such evidence.  All relevant conduct with respect to Hackbarth occurred in Tennessee, where the Plaintiffs resided and worked, *see* (Compl. ¶¶ 4–8), or in Alabama, where Hackbarth had its headquarters and controlled all corporate activity, *see* (Decl. of Barnhill ¶ 3).[3]

### III

### A

A district court that lacks personal jurisdiction "must at least consider a transfer" rather than a dismissal.  *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020).  Under 28 U.S.C. § 1631, the Court "shall" transfer a case where: (1) the court lacks jurisdiction, (2) transfer is "in the interest of justice" and (3) the action could have been brought in the transferee court at the time it was filed in this Court.  *See id.*  The Court can do so *sua sponte*, and "it need not investigate on its own all other courts that 'might' or 'could have' heard the case."  *Id.* (citations omitted).

Without personal jurisdiction over Hackbarth, the Court finds the interest of justice favors transferring the case to the Eastern District of Tennessee.  The alternative—dismissing Hackbarth from the case and requiring Plaintiffs to refile elsewhere—would be time-consuming and undermine the efficient administration of justice.  *See Flipside Wallets LLC v. Brafman Grp. Inc.*, No. 19-5356, 2020 WL 1330742, at *4 (E.D. Pa. Mar. 19, 2020).  "[P]rinciples of sound judicial administration" counsel that cases should be transferred to districts where jurisdiction exists and venue is proper.  *Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004).

---

[3]    Because Plaintiffs don't establish minimum contacts or relatedness, the Court need not consider whether the third element of the traditional test is satisfied.  *See, e.g.*, *Hasson*, 114 F.4th at 194–95, 197.

Courts in the Eastern District of Tennessee may exercise specific jurisdiction over Hackbarth because Plaintiffs' claims relate to work they performed "on behalf of and at the direction . . . Hackbarth in Tennessee." *See* (Compl. ¶¶ 4–8); *Pinker*, 292 F.3d at 368. Cencora delivered products to a Hackbarth warehouse in the district,[4] (Baldwin Dep. at 13:12–13); (Jeffry Irwin Dep. at 62:8–23); (Carrier Serv. Agreement at 81, Pl.'s Ex. G, Dkt. No. 46-7), and Plaintiffs delivered those products throughout that area,[5] *see Burger King*, 471 U.S. at 472 (finding minimum contacts where defendant purposefully avails itself "of the opportunity to do business in the forum state"); *Ford Motor*, 592 U.S. at 365 (finding relatedness where the defendant, the forum, and the plaintiffs' claims all shared a common link). For the same reasons, venue is proper in the Eastern District of Tennessee. *See* 28 U.S.C. § 1391(b)(3).

## B

With respect to Cencora, the Court "may" transfer any civil action "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought."[6] 28 U.S.C. § 1404(a); *Danziger*, 948 F.3d at 132 (allowing *sua sponte* transfers); *see also Utz Quality Foods, LLC v. Dirty S. BBQ Co., LLC*, No. 20-1146, 2020 WL 4334903, at *5 (E.D. Pa. July 28, 2020) (transferring a

---

[4]     Hackbarth operated a warehouse in Alcoa, Tennessee. *See* (Jeffry Irwin Dep. at 62:8–23).

[5]     Baldwin delivered products in the Kingsport area. *See* (Baldwin Dep. at 50:19–51:6, Pl.'s Ex. B, Dkt. No. 46-2). Watt did so around Knoxville, Tennessee. *See* (Watt Dep. at 30:24–31:7, Pl.'s Ex. C, Dkt. No. 46-3). Mr. Irwin had routes in Knoxville and Sneedville. *See* (Jeffry Irwin Dep. at 69:1–10, Pl.'s Ex. D, Dkt. No. 46-4). Ms. Irwin delivered to Oneida, Jellico, and Bristol. *See* (Jenny Irwin Dep. at 63:22–64:7, Pl.'s Ex. E, Dkt. No. 46-6). And Thomas only made one delivery for Hackbarth outside of Tennessee. *See* (Thomas Dep. at 30:1–5, Pl.'s Ex. F, Dkt. No. 46-6).

[6]     For similar reasons as with Hackbarth, courts in the Eastern District of Tennessee have specific jurisdiction over Cencora and venue is proper there. Among other things, Cencora delivered its products to a Hackbarth warehouse in that district, *see* (Compl. ¶¶ 20–22, 27); (Jeffry Irwin Dep. at 62:8–23); (Carrier Serv. Agreement at 81), and Plaintiffs scanned each delivery on an application Cencora provided them, *see* (Compl. ¶¶ 22–27).

defendant without personal jurisdiction under § 1631 and transferring a defendant with personal jurisdiction under § 1404(a)).  That decision "lies within the broad discretion of the district court" and requires a "flexible and individualized analysis."  *See* 17 *Moore's Federal Practice* § 111.13[1][a] (3d ed. 2026).

Where, as here, venue is proper for some defendants and dismissal is inappropriate, the Court can either transfer the entire case to a district where venue is proper for all defendants or sever the claims against the defendants for whom venue is improper and transfer that portion of the case.  *See Cottman Transmissions Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994).  Before doing so, the Court "should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums."  *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009).  Under § 1404(a), courts consider the convenience of the parties and witnesses, the interest of justice, and "relevant" private and public factors.  *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).  Relevant private factors include:

> (1) plaintiff's forum preference as manifested in the original choice, (2) whether the claim arose elsewhere, (3) the convenience of the parties as indicated by their relative physical and financial condition, (4) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora (5) and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citation modified). And the public factors are:

> (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora (6) and the familiarity of the trial judge with the applicable state law in diversity cases.

11

*Id.* at 879–80 (citation modified).

1

Convenience and the interest of justice favor transferring the case. The Third Circuit Court of Appeals has held a district court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Cottman*, 36 F.3d at 296. The purported joint employment relationship between Cencora and Hackbarth "underlies Plaintiffs' wage claims in this case." (Pl.'s Resp. in Opp'n at 10); (Compl. ¶¶ 20–30.) Because "the conduct of [Cencora] is central to the issued raised by [Plaintiffs] against [Hackbarth], the grant of severance would not ordinarily be consistent with the sound exercise of discretion." *Cottman*, 36 F.3d at 296.

Transferring Cencora and Hackbarth would allow the two to litigate the case together—as they have already done—and prevent Plaintiffs from pursuing similar cases in two different fora. *See Utz Quality Foods*, 2020 WL 4334903, at \*5 (finding it convenient to consolidate lawsuits with nearly identical claims to the same district); *Phoenix Ins. Co. v. Teva Pharm. Indus.*, 381 F. Supp. 3d 416, 423–24 (E.D. Pa. 2019) (same); *see also, e.g.*, (Defs.' Joint Motion to Stay Case Pending S. Ct. Decision, Dkt. No. 35); (Defs.' Joint Mot. to Stay and Compel Arb., Dkt. No. 37). And ensuring the same case is tried in one federal district court promotes judicial efficiency. *See id.*

The Eastern District of Tennessee is also more convenient for relevant witnesses. All Plaintiffs reside there, *see* (Compl. ¶¶ 4–8), and their claims pertain to their work for Cencora and Hackbarth in that district, *see* (*id.* ¶¶ 20–30).

12

2

The private factors slightly favor a transfer. First, although Plaintiffs sued Cencora in this district, none of them reside here. *See* 17 *Moore's Federal Practice* § 111.13[1][c][ii] (affording less weight to a plaintiff's decision to sue in a district that isn't the plaintiff's residence). Second, the claims arose outside of Tennessee because Cencora and Hackbarth have headquarters elsewhere. *See Phoenix Ins.*, 381 F. Supp. 3d at 423 (finding that "the defendant's headquarters can be considered the place where the claims arose"). Third, Plaintiffs resided in Tennessee, and Cencora is a multibillion-dollar company that has not claimed it can't litigate in that forum. *See, e.g., Utz Quality Foods*, 2020 WL 4334903, at *5 (favoring a transfer because one of the parties, though not located in Tennessee, was "a multi-million-dollar brand"). Fourth, no party has provided information about potential witnesses. *See id.* Fifth, neither party has argued any books or records "would be less available if the matter were transferred." *Id.* (quoting *Phoenix Ins.*, 381 F. Supp. 3d at 424).

3

The public factors also favor a transfer. First, the parties do not address the enforceability of the judgment, though judgments in this district and the Eastern District of Tennessee are equally enforceable. *See id.*, 2020 WL 4334903, at *6. Second, practical considerations cut against having "two cases involving precisely the same issues . . . pending in different District Courts." *Id.* (quoting *Phoenix Ins.*, 381 F. Supp. 3d at 424); *see also Cottman*, 36 F.3d at 296 (disfavoring severing a case where both defendants are central to the plaintiff's claims). Third, the Eastern District of Tennessee's docket is less congested than this district's docket. *See id.*; Table C-1, U.S. Dist. Cts., *Civil Cases Commenced, Terminated, and Pending During the 12-Month*

13

*Period Ending December 31, 2025*, https://uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-1 [https://perma.cc/5YUE-J2DD] (noting 8,730 cases filed here compared to 1,276 cases filed in the Eastern District of Tennessee). And fourth, Plaintiffs reside in Tennessee, and that state has an interest in deciding a local controversy involving its residents. *See* 17 *Moore's Federal Practice* § 111.13[1][l] ("When an action involves an incident occurring in a particular locale, there is a public interest in having the controversy adjudicated in that locale, rather than in a remote forum.").

*   *   *

Because the factors under §§ 1631 and 1404(a) favor transferring Hackbarth and Cencora respectively to the Eastern District of Tennessee, the Court does so *sua sponte*.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

14